Wilde, J.
We have looked into the two statutes, and are of opinion that there is no reasonable doubt as to their construction, in relation to the present question. By the first act the profits of the fishery within the town of Orrington * are secured to the town, as a corporate right. This appears to have been the principal object of the act. A committee is to be appointed annually, to compel the observance of the laws respecting the passage-ways for fish, and to remove obstructions therefrom. They are also to appoint four days in each week, from the 1st of April to the 1st of July, annually, when fish may be taken ; and no person, unless authorized by the committee, is allowed to take any fish mentioned in the act, under certain penalties. But no penalty is imposed on the committee, or those employed under them, for any violation of the act; and it was probably supposed that such violation might be sufficiently punished under the provincial law of 1741. (3)
By the statute of 1810, c. 88, the fisheries in Penobscot Bay and River were regulated, with the exception of those within the town of Orrington. This law is repealed by the act of 1813, which extends to all the waters of Penobscot River, and the streams and ponds emptying into the same, without any exception in favor of Orrington. But, instead of such exception, there is a saving clause, to preserve in force the law of 1806, under which the inhabitants of that town enjoyed an exclusive privilege. By this difference between the act of 1810 and that of 1813, it manifestly appears to have been the intention of the legislature to extend the provisions of the latter law to the town of Orrington, so far as they may be found not inconsistent with the law of 1808 ; so that the same construction should be given to the provisions of the two statutes of 1813 and 1806 as would be proper, were they incorporated in one act.
Now, it must be observed that there are several important regu lotions, contained in the law of 1813, which are independent of the law of 1806, and which are as applicable to Orrington as they are to the other towns on the river.
*178 The first I shall mention is the one respecting the salmon fisheries. This unquestionably extends to Orrington; for the ] law of 1806 relates only to the taking of shad and * alewives. In this respect, therefore, there are no conflict ing provisions.
2. It is well known that, in 1813, and for a short time previous, great complaints prevailed against certain newly-constructed wears, from the increase of which some apprehended the total extermination of the fish, especially of the salmon. By the 3d section of the law of 1813, these wears were regulated so that passage-ways were to be kept open three days in the week ; and it cannot be doubted that this important regulation extends to the waters within the town of Orrington. For, although this town has a right to take fish Jive days in the week, yet they, in common with the inhabitants of other towns, must enjoy their rights and privileges subject to such regulations as the public good may require. These wears might have been' interdicted altogether, without infringing any right oi privilege acquired by the town of Orrington under the law of 1806.
3. By the law of 1806, as has been already observed, the committee, and those acting under them, are unrestrained, by any penalty or forfeiture, in the liberty of taking fish at all times. There is no express prohibitory clause in the act against it, although it is very plain that the legislature intended them but four days in the week; and, by a prior law, they would have incurred a penalty by transgressing these limits. This law, however, was repealed by the act of 1813 ; so that, unless the provisions of this statute extend to the fish committee of Orrington, and those acting under them, they have an unlimited privilege, within the town, of taking fish at all times, against the manifest intent of the legislature.
But we have no doubt whatever that the provisions of the statute of 1813 extend to Orrington; and that the fishwardens of Bangor are authorized to enforce such provisions within the town of Orrington, and to prosecute for any breaches of that act. It is true that cases may be supposed which might be involved in some perplexity. For instance, at what time shall a day begin, under the law of * 1806 ? As a day, within the meaning of the law, is to be twenty-four hours, in some respects the time of beginning might seem to be immaterial; but in many cases it would probably be found to be important. Probably, it was the intention of the legislature that the day should begin at sunrise • and the law of 1806 may be explained by that of 1813. Again, suppose the time in which the taking of fish is inhibited by the act of 1813 should be included within the five days appointed by the committee for taking fish in Orrington, it might be doubted whether *179 the committee could be allowed thus to evade the manifest intendment of the law of 1813. But it is unnecessary now to resolve these questions. It is a sufficient answer to the question under con sideration, that the fisheries in Orrington are regulated by the law of 1813 ; and that the defendants have disclosed no ground of defence, to control the general construction of that law.
According to the agreement under which the case has been submitted to the Court, the defendants must be called on their recognizance.
*180 CASES ARGUED AND DETERMINED IK THE SUPREME JUDICIAL COURT, COUNTIES OF PLYMOUTH, BARNSTABLE, AND BRISTOL JULY TERM, 1818, AT TAUNTON. FOR THE PRESENT: Hon. ISAAC PARKER, Chief Justice. ^ Justices.

 Vide 2 Mass. Laws, 1022.